United States District Court
Southern District of Texas
**ENTERED**
February 04, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| ROHN M WEATHERLY, | § § | |
| Plaintiff, | § § | |
| VS. | § | CIVIL ACTION NO. 6:20-CV-00040 |
| BRIAN COLLIER, *et al*, | § § § | |
| Defendants. | § § | |

**MEMORANDUM AND RECOMMENDATION
TO DENY DEFENDANTS' MOTION TO DISMISS**

Plaintiff Rohm M. Weatherly, an inmate proceeding *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is a Motion to Dismiss filed by Defendants Brian Collier, Timothy C. Jones, Joe C. Gonzales, Valerie Maciel, and Corey Furr. (D.E. 16). For the reasons set forth below, it is respectfully recommended that this motion be **GRANTED in part** and **DENIED in part**.

**I.      JURISDICTION**

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

**II.     BACKGROUND**

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and is currently residing at the Clements Unit in

Amarillo, Texas. At the time he filed this lawsuit, Plaintiff was confined at the Stevenson Unit in Cuero, Texas.

Plaintiff sues the following defendants in this action: (1) Brian Collier, TDCJ Executive Director; (2) Timothy C. Jones, Deputy Director of Religious Services; (3) Joe C. Gonzales, Assistant Warden at the Stevenson Unit; (4) Valerie Maciel, Chief of Classification and Director of Religious Services at the Stevenson Unit; and (5) Corey Furr, Assistant Warden at the Stevenson Unit. (D.E. 1, p. 2; D.E. 6, pp. 1, 3). Plaintiff primarily claims that Defendants have burdened his ability to practice his Native American faith by wearing his hair long, in violation of his First Amendment rights and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq.* Plaintiff further claims that his equal protection rights have also been violated. Plaintiff seeks injunctive and monetary relief.

On July 23, 2020, the undersigned ordered service of Plaintiff's original and supplemental complaints on Defendants. (D.E. 1, 4, 6). On September 4, 2020, Defendants filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (D.E. 16). Plaintiff subsequently filed his response. (D.E. 19).

### III. PLAINTIFF'S ALLEGATIONS

Plaintiff, who is Native American, alleges the following relevant facts in his original and supplemental complaints. (D.E. 1, 4, 6). Pursuant to Native American practices, Plaintiff's spirit powers derive from having long hair. Having long and free-flowing hair "allows the wind spirit to carry [Plaintiff's] thoughts and prayers directly to [Fathersky]."

(D.E. 1, p. 7). The failure to maintain long hair, therefore, "violates communication between [Plaintiff], the windspirit, and Fathersky." (D.E. 1, p. 7).

On March 27, 2020, Plaintiff filed a Step 1 grievance, claiming that TDCJ's grooming policy violated RLUIPA and his First Amendment rights by not allowing him to grow his hair long in accordance with his Native American faith. (D.E. 1-3, p. 1). Assistant Warden Gonzales denied Plaintiff's Step 1 grievance. (D.E. 1-3, p. 2). Plaintiff subsequently filed a Step 2 grievance, in which he further claimed that TDCJ's policy constituted sexual discrimination. (D.E. 1-3, p. 3). Citing TDCJ's grooming policy, Defendant Jones denied Plaintiff's Step 2 grievance. (D.E. 1-3, p. 4).

Plaintiff alleges that women are allowed to grow their hair long under TDCJ's policy. (D.E. 1, p. 8; D.E. 6, p. 4). He further complains that people of Muslim and Jewish faith are allowed to grow beards and that other Native American inmates at other units are allowed to grow their hair long. (D.E. 1, p. 8; D.E. 6, p. 4).

## IV. LEGAL STANDARD

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).

Defendants move to dismiss Plaintiff's claims pursuant to Rules 12(b)(1) and 12(b)(6). (D.E. 16). Under Rule 12(b)(1), a case is properly dismissed for lack of subject

matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1887 (2d Cir. 1996)). Lack of subject matter jurisdiction may be found in three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Once the subject matter jurisdiction has been challenged, the party asserting jurisdiction retains the burden of proof that jurisdiction truly does exist. *Id*.

Rule12(b)(6), in turn, provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its *face*.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "[A] plaintiff's obligation to prove the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 554-55. When considering a motion to dismiss, district courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss

that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## V. DISCUSSION

### A. Official Capacity Claims

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Indeed, the Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ-CID officers and officials acting in their official capacities. *See Oliver*, 276 F.3d at 742 (recognizing that the Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

Defendants contend in their Motion to Dismiss that, to the extent Plaintiff sues them in their official capacities for money damages, those claims are barred by the Eleventh Amendment. (D.E. 16, pp. 5-6). The undersigned agrees. Accordingly, it is respectfully recommended that Defendants' Motion to Dismiss be granted on this issue and that Plaintiff's claims for money damages against them in their official capacities be dismissed with prejudice.

### B. Prospective Injunctive Relief

Defendants contend in their Motion to Dismiss that Plaintiff lacks standing under Article III of the Constitution to pursue injunctive relief against Defendants Gonzales, Maciel, Jones, and Furr because they lack authority to redress the injuries alleged by Plaintiff. (D.E. 16, pp. 7-8). Plaintiff seeks injunctive relief in the form of prohibiting TDCJ from enforcing its grooming policy against him.

To establish Article III standing, Plaintiff's allegations must meet the following three elements: (1) injury in fact; (2) causation; and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The redressability element requires that a favorable decision for the plaintiff will likely, not merely speculatively, redress the plaintiff's injury. *Id.* to enforce the statute. *Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001). Furthermore, a state official cannot be enjoined to act in any way that is beyond his authority to act in the first place. *Id.*

The undersigned agrees that Defendants Gonzales, Jones, Maciel, and Furr lack the authority to change or make exceptions to TDCJ's grooming policy that would allow Plaintiff to grow his hair long. Indeed, Defendants Jones, Furr, Maciel, and Gonzales are not TDCJ policy makers and lack the requisite authority to redress Plaintiff's injuries.[1] *See McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013) (holding that, in the context of RLUIPA, the Fifth Circuit has held that a plaintiff does not have standing to pursue injunctive relief where the defendant lacks authority to redress the injuries); *Okpalobi*, 244

---

[1] In addition, Defendants Furr, Maciel, and Gonzales have no authority to implement a policy change at the Clements Unit as they are employed at the Stevenson Unit where Plaintiff is no longer housed.

F.3d at 426-27 (explaining that plaintiffs "have no case or controversy" with defendants who have no power to redress the injuries alleged).

Plaintiff has named Executive Director Collier as a defendant, who in contrast to the other named defendants, appears to be the official capable of granting Plaintiff his requested injunctive relief should Plaintiff prevail in this case. Accordingly, because Defendants Jones, Furr, Maciel, and Gonzales lack the authority to effectuate any prospective injunctive relief on behalf of Plaintiff, the undersigned recommends that Plaintiff's claims for injunctive relief against them should be dismissed with prejudice for lack of Article III standing.

### C. RLUIPA

The RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government shows that the burden both "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a). The statute also provides for a cause of action for a RLUIPA violation. 42 U.S.C. § 2000cc–2(a).

Under the RLUIPA, a plaintiff bears the initial burden of showing that "the challenged government action 'substantially burdens' the plaintiff's 'religious exercise.'" *Mayfield v. Tex. Dept. of Criminal Justice.*, 529 F.3d 599, 613 (5th Cir. 2008). Religious exercise is substantially burdened if the burden "truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs."

*Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004). Once the plaintiff meets his initial burden, the burden shifts to the government to "demonstrate that its action was supported by a compelling interest and that the regulation is the least restrictive means of carrying out that interest." *Mayfield*, 529 F.3d at 613.

Congress enacted RLUIPA to provide broad protection for religious liberty. *Holt v. Hobbs*, 574 U.S. 352, 356 (2015). Thus, RLUIPA protections are expansive and are to be construed broadly to favor the maximum religious liberty appropriate in an institutional setting. *Id.* at 357.

### (1) Individual Capacity

Defendants contend in their Motion to Dismiss that RLUIPA does not allow for individual capacity claims or claims seeking monetary relief. (D.E. 16, pp. 6-7). The undersigned agrees.

RLUIPA does not permit a claimant to pursue claims against government officials in their individual capacities. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 329 (5th Cir. 2009). Plaintiff also may not seek monetary relief with respect to his RLUIPA claim. *Sossamon v. Texas*, 563 U.S. 277, 288 (2011) (holding that, because injunctive or declaratory relief is the only relief a court may grant under RLUIPA, a claimant may not seek monetary damages for his or her RLUIPA claim). Accordingly, the undersigned respectfully recommends that the Court grant the Defendant's Motion to Dismiss and dismiss with prejudice Plaintiff's RLUIPA claim against Defendants in their individual capacities and his RLUIPA claim seeking monetary relief damages against Defendants.

*(2) Merits of RLUIPA claim*

The parties disagree as to whether TDCJ's grooming policies violate RLUIPA with respect to Plaintiff's request to grow his hair long in accordance with his Native American faith. (D.E. 16, p. 9; D.E. 19, p. 9). Plaintiff's allegations, as set forth in his complaints, reflect his sincere belief as a Native American. They further indicate that the TDCJ's grooming policy has placed a substantial burden on his ability to practice his faith by prohibiting him from growing his hair long.

Plaintiff's allegations are sufficient at this stage to warrant further factual development of his RLUIPA claim. *See Holt*, 574 U.S. at 369-70; *Davis v. Davis*, 826 F.3d 258, 267-72 (5th Cir. 2016); *Cobb v. Morris*, No. 2:14-CV-22, 2018 WL 842406, at *9-10 (S.D. Tex. Jan. 11, 2018); *White v. Davis*, No. A-16-059, 2017 WL 3274871, at *4 (W.D. Tex. Aug 1, 2017). Accordingly, the undersigned respectfully recommends that the Court deny Defendants' Motion to Dismiss as Plaintiff's RLUIPA claim should be allowed to proceed forward against Executive Director Collier in his official capacity only for injunctive relief.

**D. First Amendment**

The First Amendment provides that Congress shall make no law respecting the establishment of religion or prohibiting the free exercise thereof. U.S. Const., amend I. While prisoners retain their First Amendment rights, including the right to free exercise of religion, they only retain those First Amendment rights which "are not consistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."

*Pell v. Procunier*, 427 U.S. 817, 822 (1974). Thus, a prisoner's right to practice his religion may be limited where the prison officials establish that there is a legitimate penological objective. *Id.*; *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972) (per curiam); *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

In evaluating the reasonableness of a prison regulation, four factors are considered: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it," (2) "whether there are alternative means of exercising the right that remain open to prison inmates," (3) "the impact accommodation ... will have on guards and other inmates, and on the allocation of prison resources generally," (4) whether there are "ready alternatives that could fully accommodate[ ] the prisoner's rights at de minimis cost to valid penological interests." *Turner*, 482 U.S. at 89–91 (internal citations and quotation marks omitted). While *Turner*'s standard encompasses four factors, the Fifth Circuit has noted that "rationality is the controlling factor, and a court need not weigh each factor equally." *Mayfield*, 529 F.3d at 607 (citation omitted).

Defendants contend that Plaintiff's claim based on his desire to wear long hair fails to rise to the level of a constitutional violation under the First Amendment. Plaintiff

10 / 16

responds that Defendants have failed to properly explain how their grooming policy does not violate constitutional standards. (D.E. 19, p. 9).

The First Amendment provides less protection than the RLUIPA. *Holt*, 574 U.S. at 361-62; *McKnight v. MTC*, No. 3:15-CV-1647, 2015 WL 7730995, at *4 (N.D. Tex. Nov. 9, 2015). The Fifth Circuit has consistently rejected prisoners' First Amendment claims against a prison's grooming policy, concluding that such grooming policies are rationally related to legitimate penological interests of identification and safety. *See Green v. Polunsky*, 229 F.3d 486 (5th Cir. 2000) (rejecting First Amendment claim against TDCJ's ban on long hair and beards); *Taylor v. Johnson*, 257 F.3d 470 (5th Cir. 2001) (affirming dismissal of First Amendment claim against TDCJ's ban of religious beards); *Ali v. Quarterman*, 434 F. App'x 322 (5th Cir. 2011) (same); *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995) (affirming the dismissal of a Rastafarian inmate's First Amendment claim as frivolous where he sought to challenge the TDCJ's policy prohibiting long hair and beards).

Accordingly, based on the various decisions issued by the Fifth Circuit, the undersigned respectfully recommends that Defendants' Motion to Dismiss (D.E. 16) be granted on this issue and that Plaintiff's First Amendment claim against Defendants in their individual and official capacities be dismissed for failure to state a claim for relief.

### E. Equal Protection

Plaintiff asserts violations of his equal protection rights on the following grounds: (1) women are allowed to grow their hair long under TDCJ's policy; (2) inmates of Muslim

and Jewish faith are allowed to grow beard; and (3) Native American inmates at other units are allowed to grow their hair long. The Equal Protection Clause of the Fourteenth Amendment states that "no state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV § 1. The Equal Protection Clause directs that similarly situated people should be treated alike. *Plyler v. Doe*, 457 U.S. 202, 216 (1982).

Equal protection jurisprudence typically has been concerned with governmental classifications that affect some groups of citizens differently than others. *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 601 (2008). Plaintiffs in such cases generally allege that they have been arbitrarily classified as members of an identifiable group. *Id.* The Equal Protection Clause does not require "that every religious sect or group within a prison-however few in number-must have identical facilities or personnel"; it requires only that prison officials afford inmates "reasonable opportunities ... to exercise the religious freedom guaranteed by the First and Fourteenth Amendment[s]." *Baranowski v. Hart,* 486 F.3d 112, 123 (5th Cir. 2007).

Defendants contend in their Motion to Dismiss that Plaintiff has failed to allege Defendants have treated him differently than any other similarly-situated inmate. (D.E. 16, p. 11). At the outset, Plaintiff's equal protection claim regarding the application of different TDCJ grooming policies to male and female inmates is foreclosed by the Fifth Circuit. *See Longoria v. Dretke*, 507 F.3d 898, 904-05 (5th Cir. 2007) (concluding there is no equal protection violation under the TDCJ's grooming policy even though female

prisoners are allowed to grow their hair long while male inmates are not); *Hill v. Estelle*, 537 F.2d 214, 215-16 (5th Cir. 1976) (same).

Plaintiff otherwise presents no allegations to suggest that the TDCJ's grooming policy was enacted with any discriminatory animus towards Native American inmates. Other than offering in a conclusory manner that inmates from other religious faiths are permitted to grow their beards long, Plaintiff alleges no specific facts to indicate he is being treated differently under TDCJ's grooming policy with regard to the prohibition against growing long hair. Lastly, Plaintiff alleges no specific facts to: (1) identify a Native American inmate who was allowed to grow his hair long under the grooming policy; or (2) show how Plaintiff was similarly situated to such inmate and treated unfavorably.

Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss (D.E. 16) be granted on this issue and that Plaintiff's equal protection claims against Defendants in their individual and official capacities be dismissed for failure to state a claim for relief.

### F. Qualified Immunity

With regard to Plaintiff's First Amendment and equal protection claims raised against Defendants in their individual capacities, the doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). "To discharge this burden, the plaintiff must satisfy a two-prong test. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). First, he must claim that the defendant committed a constitutional violation under current law. *Id.* Second, he must claim that the defendant's action was objectively reasonable in light of the law that was clearly established at the time of the complained-of actions. *Id.*

It is often but not always appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation has occurred. *See Pearson*, 555 U.S. at 236. In this case, because Plaintiff has failed to establish either a First Amendment or equal protection claim against Defendants in their individual capacities, it is not necessary to examine whether their actions were objectively reasonable.

Accordingly, it is respectfully recommended that Defendants are entitled to qualified immunity as to Plaintiff's First Amendment and equal protection claims asserted against them in their individual capacities.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned respectfully recommends that Defendants' Motion to Dismiss (D.E. 16) be **GRANTED in part** and **DENIED in part**. The undersigned respectfully recommends that: (1) Defendants' Motion to Dismiss (D.E. 16) be **GRANTED in part** to the extent that: (a) Plaintiff's claims for money damages

against Defendants in their official capacities be **DISMISSED with prejudice**; (b) Plaintiff's claims for injunctive relief against Defendants Jones, Furr, Maciel, and Gonzales be **DISMISSED with prejudice** for lack of Article III standing; (c) Plaintiff's RLUIPA claim against Defendants in their individual capacities and his RLUIPA claim seeking monetary damages be **DISMISSED with prejudice**; and (d) Plaintiff's First Amendment and equal protection claims against Defendants in their individual and official capacities be **DISMISSED with prejudice** for failure to state a claim for relief and because they are entitled to qualified immunity as a matter of law; and (2) Defendants' Motion to Dismiss (D.E. 16) be **DENIED in part** with respect to Plaintiff's RLUIPA claim against Executive Director Collier in his official capacity only for injunctive relief.

    Respectfully submitted on February 4, 2021.

                                                   _____
                                                   Julie K. Hampton
                                                   United States Magistrate Judge

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).